# 25-10011-FF

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

MARCUS TELFAIR,

Defendant-Appellee.

---

On Appeal from the United States District Court
For the Middle District of Georgia, Albany Division
District Court No. 1:23-cr-00028-LAG-TQL-1

---

**BRIEF OF APPELLANT**

---

WILLIAM R. KEYES
United States Attorney

MICHELLE L. SCHIEBER
Assistant United States Attorney

STUART E. WALKER
Assistant United States Attorney

Attorneys for Appellant

300 Mulberry St., Suite 400
P.O. Box 1702
Macon, Georgia 31202
(478) 752-3511
mikki.schieber@usdoj.gov

United States v. Telfair, No. 25-10011-FF

**AMENDED CERTIFICATE OF INTERESTED PERSONS**

In compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-5, the undersigned counsel of record certifies that the following persons have, or may have had, an interest in the outcome of this case.

Booker, C. Shanelle – former Acting United States Attorney, Middle District of Georgia;

Conway, Byron L., Jr. – Executive Director, Federal Defenders of the Middle District of Georgia, Inc.;

Gabriel, Russell C. – former Interim Executive Director, Federal Defenders of the Middle District of Georgia, Inc.;

Gardner, Leslie Abrams – Judge, United States District Court, Middle District of Georgia;

Hargrove, Elicia – former Assistant United States Attorney, Middle District of Georgia;

Keyes, William R. – United States Attorney, Middle District of Georgia;

Langstaff, Thomas Q. – former United States Magistrate Judge, Middle District of Georgia;

C-1 of 2

United States v. Telfair, No. 25-10011-FF

Leary, Peter D. – former United States Attorney, Middle District of Georgia;

Lee, Jessica M. – Attorney for Defendant-Appellee;

Redavid, Matthew, Jr. – Assistant United States Attorney, Middle District of Georgia;

Schieber, Michelle L. – Assistant United States Attorney, Middle District of Georgia;

Sheppard, Alfreda L. – United States Magistrate Judge, Middle District of Georgia;

Simpkins, Michael N. – Attorney for Defendant-Appellee;

Telfair, Marcus Ryan – Defendant-Appellee;

Walker, Stuart E. – Assistant United States Attorney, Middle District of Georgia;

Victims: No victims have been identified.

No publicly traded company or corporation has an interest in the outcome of this appeal.

/s/ Stuart E. Walker
Assistant United States Attorney
Georgia Bar No. 141620

C-2 of 2

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not request oral argument. The issues in the case are relatively straightforward and oral argument will not significantly further the Court's decisional process. The issues can be sufficiently addressed by the parties in their briefs.

# TABLE OF CONTENTS

AMENDED CERTIFICATE OF INTERESTED PERSONS ........................... C-1

STATEMENT REGARDING ORAL ARGUMENT............................................. i

TABLE OF CONTENTS ...................................................................................ii

TABLE OF AUTHORITIES...........................................................................iv

STATEMENT OF JURISDICTION .............................................................. vii

STATEMENT OF THE ISSUE ........................................................................1

STATEMENT OF THE CASE...........................................................................1

    A.    Statement of the Facts and Procedural History ..................................2

        1.  Telfair's Indictment and Guilty Plea ..............................................2

        2.  Telfair's Draft Presentence Investigation Report.........................4

        3.  Telfair's Objections to the Draft Report; the Final Presentence Report .........................................................................................8

        4.  Telfair's Sentencing ....................................................................10

    B.    Statement of the Standard of Review ................................................15

SUMMARY OF THE ARGUMENT..................................................................15

ARGUMENT AND CITATION OF AUTHORITY ........................................ 17

U.S.S.G. § 2K2.1(c)(1)(A)'S CROSS-REFERENCE APPLIES WHEN THE DEFENDANT HAS COMMITTED ANOTHER STATE OFFENSE.........17

    A.    Statutory and Legal Background. ......................................................17

    B.    The Unambiguous Text of U.S.S.G. § 2K2.1(c)(1)(A) Shows that the Cross-reference Applies when the Defendant has Committed Another State Offense. ....................................................................19

C.     The Guidelines Commentary Further Supports a Determination that the District Court Erred. ..............................................................27

D.     This Court's Decision in *United States v. Cenephat* Supports a Finding that the District Court Erred. ..............................................................30

CONCLUSION ...............................................................................................35

CERTIFICATE OF COMPLIANCE ................................................................36

CERTIFICATE OF SERVICE .........................................................................37

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                              **Page(s)**

*Gall v. United States*,
   552 U.S. 38 (2007) ................................................................................ 32

*Stevens v. Premier Cruises, Inc.*,
   215 F.3d 1237 (11th Cir. 2000) ....................................................... 20

*United States v. Adams*,
   518 F. App'x 765 (11th Cir. 2013)............................................... 33-34

*United States v. Aduwo*,
   64 F.3d 626 (11th Cir. 1995) ........................................................... 34

*United States v. Arias*, No. 93-1624
   1994 WL 847, 14 F.3d 45 (1st Cir. 1994) ...................................... 26

*United States v. Cenephat*,
   115 F.4th 1359 (11th Cir. 2024) ..................................... 14, 16, 30, 31, 32, 33

*United States v. Dougherty*,
   754 F.3d 1353 (11th Cir. 2014) ....................................................... 15

*United States v. Dupree*,
   57 F.4th 1269 (11th Cir. 2023) .................................... 18-19, 27, 33

*United States v. Foster*,
   229 F. App'x 883 (11th Cir. 2007) ................................................ 33

*United States v. Gross*,
   90 F.4th 715 (4th Cir. 2024) ..................................................... 24, 25

*United States v. Grushko*,
   50 F.4th 1 (11th Cir. 2022) ............................................................. 15

*United States v. Isaac*,
   987 F.3d 980 (11th Cir. 2021) ....................................................... 20

iv

*United States v. James,*
   135 F.4th 1329 (11th Cir. 2025) ................................................................... 19

*United States v. Perkins,*
   52 F.4th 742 (8th Cir. 2022) ....................................................... 28, 29, 30, 32

*United States v. Robinson,* No. 23-11325,
   2024 WL 1550870 (11th Cir. Apr. 10, 2024) ............................................... 33

*United States v. Scheels,*
   846 F.3d 1341 (11th Cir. 2017) ................................................................... 20

*United States v. Schreck,*
   130 F.4th 1297 (11th Cir. 2025) ................................................................. 20

*United States v. Smith,*
   910 F.2d 326 (6th Cir. 1990) ....................................................................... 25

*United States v. Turnley,*
   627 F.3d 1032 (6th Cir. 2010) ............................................................... 25, 26

**Federal Statutes**

18 U.S.C. § 922(g)(1) ................................................. 1, 2, 4, 6, 8, 17, 31
18 U.S.C. § 924(a)(8) .................................................................................. 2, 8
18 U.S.C. § 3231 ......................................................................................... vii
18 U.S.C. § 3742(a) ..................................................................................... vii
28 U.S.C. § 1291 .......................................................................................... vii

**Federal Sentencing Guidelines**

U.S.S.G. § 1B1.2 ......................................................................................... 30
U.S.S.G. § 1B1.2(a) ................................................................................ 24, 30
U.S.S.G. § 2A2.1 ..................................................................................... 31, 33
U.S.S.G. § 2A2.1(a)(1) ................................................................................ 34
U.S.S.G. § 2A2.2 ......................................................................................... 25
U.S.S.G. § 2A2.2 cmt. n.1 ........................................................................... 25

U.S.S.G. § 2A4.1(a) ................................................................. 7, 22, 23, 33

U.S.S.G. § 2K2.1 ...................................................... 17, 24, 26, 27, 29, 34

U.S.S.G. § 2K2.1 cmt. n.14(C) ................................................. 9, 17, 28

U.S.S.G. § 2K2.1(c)(1) ............................... 1, 6, 9, 10, 13, 14, 15, 16, 21, 23, 24,
26, 27, 28, 30, 32, 33

U.S.S.G. § 2K2.1(c)(1)(A) ......................... 1, 7, 8, 9, 15, 16, 17, 19, 20

U.S.S.G. § 2X1.1 ................................................. 1, 6, 7, 15, 17, 20, 31

U.S.S.G. § 2X1.1(a) ................................................... 18, 22, 23, 26

U.S.S.G. § 2X1.1 cmt. n.2 ............................................................. 18

U.S.S.G. § 2X1.1 cmt. n.3 ............................................................18, 24, 29

U.S.S.G. § 2X5.1 ............................................................15, 18, 24, 29, 30

U.S.S.G. § 2X5.1 cmt. background ................................................ 30

U.S.S.G. § 3C1.2 ......................................................................... 33

**Federal Rules**

Federal Rule of Appellate Procedure 4(b)(1)(B)(i) ........................................ vii

Federal Rule of Appellate Procedure 26.1 .................................................. C-1

Federal Rule of Appellate Procedure 32(a)(5) ............................................... 36

Federal Rule of Appellate Procedure 32(a)(6) ............................................... 36

Federal Rule of Appellate Procedure 32(a)(7)(B) ........................................... 36

Federal Rule of Appellate Procedure 32(f) .................................................... 36

**Miscellaneous**

*Black's Law Dictionary* (5th ed. 1979) ................................................... 21

*Black's Law Dictionary* (6th ed. 1990) ................................................... 21

*Black's Law Dictionary* (10th ed. 2009) ................................................. 21

*Mellinkoff's Dictionary of American Legal Usage* (West Publ'g. Co. 1992) ...... 21

*Merriam-Webster's Collegiate Dictionary* (11th ed. 2020) ................................. 21

*Webster's New World College Dictionary* (5th ed. 2016) .................................... 21

## STATEMENT OF JURISDICTION

This appeal is from the sentence imposed following a guilty plea in the United States District Court for the Middle District of Georgia.  The district court had subject matter jurisdiction under 18 U.S.C. § 3231.  This Court has jurisdiction over the final decision of the district court pursuant to 28 U.S.C. § 1291 and authority to review the sentence pursuant to 18 U.S.C. § 3742(a). The district court imposed sentence on November 25, 2024, and entered judgment on December 2, 2024. The United States filed a timely notice of appeal on January 2, 2025. Fed. R. App. P. 4(b)(1)(B)(i).

**STATEMENT OF THE ISSUE**

The district court found by a preponderance of the evidence that Telfair, convicted of violating 18 U.S.C. § 922(g)(1), used or possessed a firearm in the commission of another offense—state-law kidnapping—but declined to determine Telfair's base offense level using the cross-reference in U.S.S.G. § 2K2.1(c)(1)(A). This appeal presents one question: Did the district court err when it concluded that it could not apply U.S.S.G. § 2K2.1(c)(1)(A)'s cross-reference provision because it applies only when the defendant has committed another *federal* offense, not a state offense?

**STATEMENT OF THE CASE**

After Marcus Telfair pleaded guilty to violating 18 U.S.C. § 922(g)(1), Probation recommended that his base offense level be calculated using the state offense of kidnapping instead of the base offense level for a violation of § 922(g)(1), as authorized by U.S.S.G. § 2K2.1(c)(1). The district court refused to apply the cross-reference, however, reasoning that because the elements of Georgia kidnapping did not align with the elements of federal kidnapping, the cross-reference could not apply. Because the district court

1

erred in its understanding and application of the cross-reference, the United States brings this appeal.

## A.    Statement of the Facts and Procedural History

### 1.    Telfair's Indictment and Guilty Plea

In 2023, a grand jury in the Middle District of Georgia indicted Telfair on a single count of possessing a firearm knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(8). Doc. 1.[1] Without the benefit of a plea agreement, Telfair pleaded guilty to the indictment as charged. Doc. 41.

At the change of plea hearing, Telfair agreed that at trial the United States could prove the elements of an 18 U.S.C. § 922(g)(1) violation beyond a reasonable doubt. Telfair thus acknowledged that on October 23, 2023, he knowingly possessed a firearm that had been shipped in interstate

---

[1] References to the district court documents are indicated by "Doc." followed by the relevant docket number.

commerce knowing that he had been previously convicted of a felony that was punishable by more than one year in prison. Doc. 43 at 12-14.[2]

During the plea hearing, the United States further explained for the benefit of the court the circumstances of Telfair's arrest. The AUSA explained that Albany police officers had responded to a call from an individual who had called 911 when he saw a man—who was later identified as Telfair—dragging a woman by the hair. Doc. 43 at 9-10. When officers arrived and attempted to detain Telfair, he fled on foot. Doc. 43 at 10. Both the victim and the caller told police that Telfair threatened them with a gun. Doc. 43 at 10. During a search of the nearby area, officers found Telfair lying under a porch. Doc. 43 at 10. During a search incident to Telfair's arrest, officers found a Ruger semiautomatic pistol in Telfair's backpack. Doc. 43 at 10.

Officers later determined that the Ruger found in Telfair's possession in Albany, Georgia, had been manufactured in Arizona. Doc. 43 at 10-11. A review of Telfair's criminal history revealed previous felony convictions,

---

[2] References to the pages in the transcripts are to the page numbers generated by the district court's electronic filing system.

which led to his indictment for violating 18 U.S.C. § 922(g)(1). Doc. 43 at 11-12. Telfair refused to admit any of the facts asserted by the AUSA other than those necessary to establish the elements of the offense of conviction, acknowledging only "that he possessed the firearm that was in that backpack, and that the firearm traveled in interstate commerce, and that he knew that he was a convicted felon and wasn't able to possess a firearm." Doc 43 at 12-13.

### 2. Telfair's Draft Presentence Investigation Report

#### a. The Offense Conduct

In anticipation of sentencing, using the Guidelines Manual effective November 1, 2023, the United States Probation Office prepared a Presentence Investigation Report for the court. Doc. 42 ¶ 15. As part of the Offense Conduct portion of the Report, Probation detailed the events that led to Telfair's arrest on October 23, 2023, which were consistent with the facts detailed by the United States during the plea colloquy. The Report stated that when officers responded to a residential area in response to a complaint of an assault, they observed Telfair pulling a screaming woman by the hair. Doc. 42 ¶ 5. As the officers approached, Telfair fled on foot, but

was later located hiding under the porch of a nearby residence. Doc. 42 ¶¶ 5, 8. When officers searched the backpack Telfair was wearing, they discovered a 9mm Ruger semiautomatic pistol. Doc. 42 ¶ 9. A different officer who was also searching for Telfair found two Samsung phones on the ground near a house where, according to witnesses, Telfair had fled. Doc. 42 ¶ 8.

The Report detailed a police interview with Telfair's victim. The victim recounted that Telfair was an old friend who had come to her home angry because she had blocked him on her phone and would not return her calls. Doc. 42 ¶ 6. During their exchange, Telfair snatched her Samsung phone from her hand and refused to return it. He then grabbed her by her hair and dragged her out of her house and down the street while hitting her. Doc. 42 ¶ 6. At one point, the victim escaped, but Telfair caught up with her, grabbed her by her hair again, hit her in the back of the head with a gun, and threatened to shoot her. Doc. 42 ¶ 7. He again dragged her by her hair, but fled when police arrived. Doc. 42 ¶ 7.

Officers also followed up with the witness who called 911 to report the incident. Doc. 42 ¶ 10. The witness stated that he observed Telfair dragging the victim by her hair and punching her in the head. Doc. 42 ¶ 10. He ran

across the street to try to help, but Telfair pointed a gun at him and threatened to shoot him if he did not step back. Doc. 42 ¶ 10.

### b. The Offense Level Computation

In determining Telfair's advisory guidelines sentencing range, Probation began with a base offense level of twenty-four because Telfair committed the § 922(g)(1) offense after being convicted of at least two crimes of violence. Doc. 42 ¶ 17 (applying U.S.S.G. § 2K2.1(a)(2)). Probation increased Telfair's offense level by two because the Ruger he possessed was stolen, and increased the offense level an additional four because Telfair possessed the Ruger in connection with other felony offenses, namely the kidnapping, armed robbery, and aggravated assault that Telfair committed against his female victim, which led to his arrest. Doc. 42 ¶¶ 18-20. These additions resulted in a base offense level of thirty. Doc. 42 ¶¶ 17-19.

After determining a base offense level of thirty for the gun possession, Probation concluded that U.S.S.G. § 2K2.1(c)(1)(A)'s cross-reference to U.S.S.G. § 2X1.1 was appropriate. Doc. 42 ¶¶ 20-21. Section 2K2.1(c)(1) provides that if the defendant used or possessed a firearm "cited in the offense of conviction in connection with the commission or attempted

commission of another offense," the court should apply § 2X1.1 (attempt, solicitation, or conspiracy) "in respect to that other offense, if the resulting offense level is greater than that determined above." U.S.S.G. § 2K2.1(c)(1)(A).

Probation determined that the appropriate offense for the application of the cross-reference was the kidnapping and, after applying the kidnapping guideline at U.S.S.G. § 2A4.1(a), determined a base offense level of thirty-two. Doc. 42 ¶¶ 21-22. Probation then added two levels because a dangerous weapon was used in the kidnapping, and established a base offense level of thirty-four for the cross-reference offense. Doc. 42 ¶¶ 20-24. Concluding that the cross-reference offense level was higher than the firearm offense level, Probation used it to establish Telfair's base offense level. Doc. 42 ¶ 24. Probation did not add any victim-related adjustments but reduced the offense level by two for acceptance of responsibility and reduced it another level because Telfair entered into a timely plea, which resulted in a total offense level of thirty-one. Doc. 42 ¶¶ 30-32.

Telfair's subtotal criminal history score was fifteen. Doc. 42 ¶ 54. Probation added one point because Telfair committed the firearm offense

7

while under a criminal justice sentence, which resulted in a total criminal history score of sixteen, and criminal history category of VI.   Doc. 42 ¶¶ 55-56. Using a criminal history category of VI and total offense level of thirty-one, Probation determined an advisory guidelines sentencing range of 188 to 235 months' imprisonment. Doc. 42 ¶ 82.  The statutory maximum penalty for a violation of 18 U.S.C. § 922(g)(1) occurring on or after June 25, 2022, is 15 years' imprisonment. Doc. 42 ¶ 82; 18 U.S.C. § 924(a)(8). Because the minimum of the guideline range was higher than the maximum sentence authorized by statute, Telfair's guideline sentence became 180 months. Doc. 42 ¶ 82.

### 3.    Telfair's Objections to the Draft Report; the Final Presentence Report

Telfair objected to the Draft Report. Doc. 44. As relevant here, Telfair objected to all the facts detailing the kidnapping, robbery, and assault of the victim that led to his arrest. Doc. 44 at 1-3 (objecting to paragraphs 4-11). Consistent with this challenge, Telfair also objected to Probation's decision to apply the cross-reference in U.S.S.G. § 2K2.1(c)(1)(A). Doc. 44 at 6-7.

Telfair asserted that the phrase "another offense" in § 2K2.1(c)(1)(A) refers exclusively to another federal offense. Doc. 44 at 6.  He further

maintained that reference to the commentary at U.S.S.G. § 2K2.1 cmt. n.14(c) was not appropriate because the meaning of the phrase "another offense" in § 2K2.1(c)(1)(A) is unambiguous. Doc. 44 at 6-7. Telfair also objected to the use of the cross-reference based on his objection to the facts used to establish the other offense. Doc. 44 at 7.

In response to Telfair's assertion that the phrase "another offense" in § 2K2.1(c)(1)(A) encompasses only federal offenses, the United States noted that Telfair was inserting language into the guideline that was not supported by the text of § 2K2.1(c)(1). Doc. 47 at 3-4. As the United States pointed out, to accept Telfair's position, the court would have to read § 2K2.1(c)(1) to apply only if the defendant used or possessed a firearm "cited in the offense of conviction in connection with the commission or attempted commission of another *federal* offense." Doc. 47 at 3-4 (emphasis added). As the United States also pointed out, nothing in § 2K2.1(c)(1) restricts "another offense" to the laws of any particular sovereign authority (local, state, or federal government). Doc. 47 at 3-5.

Probation issued a Final Presentence Report that recommended the same guideline sentence of 180 months, based on the same calculated

sentencing range of 188 to 235 months. Doc. 46 ¶ 82.  Probation acknowledged that Telfair did not admit all the facts stated by the United States during the plea colloquy. Doc. 46-1 at 1. Probation nevertheless took the position that there was sufficient evidence to prove the kidnapping conduct, and that conduct satisfied the commission of "another offense" for purposes of the cross-reference in § 2K2.1(c)(1). Doc. 46-1 at 3-4.

### 4.    Telfair's Sentencing

#### a.    The Evidence of Telfair's Kidnapping, Assault, and Robbery of his Victim

The parties appeared for sentencing on November 22, 2024.  Doc. 49. Telfair renewed his objection to the use of the cross-reference. Doc. 49 at 3.

The United States presented evidence of the events leading to Telfair's arrest, including evidence concerning the kidnapping, assault, and robbery of the victim. Doc. 49 at 5-47. William Tuten, an officer with the Albany Police Department (APD), testified that he observed Telfair in front of a driveway, pulling a woman by the hair. Doc. 49 at 9. When Tuten approached, Telfair ran away. Doc. 49 at 9. When Tuten made contact with the victim, she informed him that Telfair had taken a gun from his car. Doc. 49 at 9. Tuten went after Telfair, but did not find him. He did, however,

10

find two Samsung phones on the ground in an area where Telfair had been seen. Doc. 49 at 9.

A second APD officer, Preston Ford, found Telfair lying under a porch behind an abandoned house. Doc. 49 at 18. Ford searched a backpack that Telfair had in his possession and found a gun. Doc. 49 at 20. The APD later determined that the gun was stolen. Doc. 49 at 29.

A third APD officer, Latavia Jackson, interviewed the victim at the scene. Doc. 49 at 23-24. In the interview, the victim described how Telfair confronted her while she was on the phone at a boarding house, snatched her phone from her, and grabbed her by the hair and drug her out of the boarding house. Doc. 49 at 24. Jackson recorded the interview with her cellphone, and that interview was played for the court. Doc. 49 at 24-25, Gov't Ex 5.

Jackson also interviewed a witness who told her that he was mowing his yard when he heard a woman screaming. Doc. 49 at 25. He observed Telfair pulling the victim through the yard by her hair and beating her in the head with a gun. Doc. 49 at 25-26. When the witness confronted Telfair, Telfair turned the gun on him and told him to step back. Doc. 49 at 26. The

11

witness then called the police. Doc. 49 at 26. Jackson also recorded that interview, which was played for the court. Doc. 49 at 27, Gov't Ex 4. Jackson later charged Telfair with kidnapping. Doc. 49 at 29.

### b.    The Findings of the District Court

After hearing the evidence, the court found by a preponderance of the evidence that the facts set forth in paragraphs four through ten in the presentence report were accurate, stating:

> . . . . And, more specifically I find that the defendant did, in fact, assault the victim in the house, drag her out of the house by her hair, drag her at least two houses down the street where she was encountered by officer -- and as many times as we have said it -- Tuten.
>
> I find, by a preponderance of the evidence, that while in the house he did take the defendant's [sic] cellphone.
>
> I find that he assaulted the defendant [sic], both by punching her and by hitting her with the firearm.
>
> I find that he brandished the firearm and pointed the firearm at her, as established both by her statement contemporaneously, or just after, as well as Mr. Eddie's statement.
>
> I find, by a preponderance of the evidence, that he pointed that firearm also at Mr. Eddie during the course of these actions.

Doc. 49 at 50-51.

12

Despite concluding that the facts supported a finding that Telfair committed kidnapping, assault, and robbery, the court declined to apply the cross-reference in § 2K2.1(c)(1). Doc. 49 at 53. The court explained that the elements of Georgia kidnapping "do not align with the elements of federal kidnapping." Doc. 49 at 53. The court elaborated on this finding: "And so this idea that I could apply the cross-reference that would apply to federal kidnapping to a State kidnapping simply doesn't work. The elements aren't there." Doc. 49 at 53. The court then discussed how the facts as proven by the United States failed to establish the elements of a federal kidnapping, adding that "if there was a cross-reference guideline for me to refer to, that is for State kidding [sic], then maybe I could do it." Doc. 49 at 53-54.

The court reasoned that, for the cross-reference to apply, the "other offense here would necessarily have to be capable of being charged federally" and because Telfair's conduct lacked an interstate element, the cross-reference did not apply. Doc. 49 at 54. The court rejected the United States' argument that controlling authority from this Court had affirmed the application of the cross-reference in a case involving a state offense as the

13

other offense referenced in § 2K2.1(c)(1). Doc. 49 at 54-55, 56 (citing *United States v. Cenephat*, 115 F.4th 1359 (11th Cir. 2024)).

The court refused to look at the commentary to § 2K2.1(c) because it found the guideline, as written, to be unambiguous. Doc. 49 at 55. The court also found that for the cross-reference to apply, the other offense must have "an applicable federal offense level," adding, "That is what the language clearly says." Doc. 49 at 55. The court sustained Telfair's objection with regard to paragraphs twenty through twenty-four and then invited this Court to "come back and clear it up for all of us." Doc. 49 at 56. The United States objected to the court's decision not to apply the cross-reference. Doc. 49 at 75-76.

The district court rejected Telfair's other objections and rejected the United States' request to deny Telfair a reduction for acceptance of responsibility. The court determined a base offense level of twenty-seven, a criminal history category of VI, and an advisory guidelines range of 130 to 162 months' imprisonment. Doc. 49 at 67-68. The court elected to sentence Telfair to the bottom of the newly calculated guidelines range and imposed a sentence of 130 months' imprisonment. Doc. 49 at 73.

14

**B.**    **Statement of the Standard of Review**

When reviewing a sentence for procedural error, the Court considers "a district court's interpretation of a sentencing guideline provision or term *de novo*." *United States v. Dougherty*, 754 F.3d 1353, 1358 (11th Cir. 2014). *See also United States v. Grushko*, 50 F.4th 1, 10 (11th Cir. 2022).

## SUMMARY OF THE ARGUMENT

The unambiguous text of U.S.S.G. § 2K2.1(c)(1) shows that the cross-reference applies when the defendant has committed a state offense. Section 2K2.1(c)(1)'s reference to "another offense" contains no text limiting that phrase to only *federal* offenses. The district court failed to thoroughly analyze U.S.S.G. §§ 2X1.1 and 2X5.1 in relation to U.S.S.G. § 2K2.1(c)(1), which resulted in the erroneous conclusion that only offenses that can be charged federally can be used to support an increased base offense level under § 2K2.1(c)(1)(A).

Section 2K2.1(c)(1) is unambiguous, thereby rendering reference to the commentary unnecessary. If found to be ambiguous, however, the commentary—which defines "another offense" to mean "any federal, state, or local offense"—supports a determination that the district court erred in

15

refusing to apply § 2K2.1(c)(1) despite concluding that the evidence supported a finding that Telfair committed Georgia kidnapping.

In *United States v. Cenephat*, 115 F.4th 1359 (11th Cir. 2024), this Court affirmed a district court's finding that a defendant possessed firearms in connection with state-law attempted murder and correctly applied the cross-reference to U.S.S.G. § 2K2.1(c)(1). *Cenephat* supports a finding that a state offense can be used to support the application of U.S.S.G. § 2K2.1(c)(1)(A)'s cross-reference provision.

## ARGUMENT AND CITATION OF AUTHORITY

## U.S.S.G. § 2K2.1(c)(1)(A)'S CROSS-REFERENCE APPLIES WHEN THE DEFENDANT HAS COMMITTED ANOTHER STATE OFFENSE

The district court committed procedural error when it refused to apply the cross-reference in U.S.S.G. § 2K2.1(c)(1)(A), even though the court found that Telfair used a firearm during a Georgia kidnapping.

### A.    Statutory and Legal Background

1.    The guideline for a violation of 18 U.S.C. § 922(g)(1) is found at U.S.S.G. § 2K2.1. That guideline directs the use of a cross-reference to establish the base offense level. Section 2K2.1(c)(1)(A) explains that "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense," a district court should apply Section "2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than" the offense level for the offense of conviction. U.S.S.G. § 2K2.1(c)(1)(A). The guidelines commentary notes that "'*[a]nother offense*', for purposes of subsection (c)(1), means any federal, state, or local offense, . . . regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G § 2K2.1 cmt. n.14(C).

17

Section 2X1.1, in turn, provides that the base offense level for attempt, solicitation, or conspiracy is "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a).

Section 2X5.1 states that "[i]f the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 shall control, except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable." U.S.S.G. § 2X5.1. The commentary to that guideline explains that the term "substantive offense" means "the offense that the defendant was convicted of soliciting, attempting, or conspiring to commit." U.S.S.G § 2X1.1 cmt. n.2. The commentary further notes that "[i]f the substantive offense is not covered by a specific guideline, see § 2X5.1 (Other Offenses)." *Id.* n.3.

2.    This Court has instructed that, when considering how to treat the Sentencing Commission's interpretation of a guideline, "a court initially

18

should consider whether 'the meaning of the [guideline] is in doubt.'" *United States v. Dupree*, 57 F.4th 1269, 1274 (11th Cir. 2023) (en banc). In making that determination, the court must first "exhaust all the 'traditional tools' of construction." *Id.* at 1275. If there is no uncertainty, that is, if the guideline "just means what it means," then "the court must give it effect, as the court would any law." *Id.*

Following *Dupree*, this Court explained that "a [guideline] may be genuinely ambiguous if the rule does 'not directly or clearly address every issue,' 'prove[s] susceptible to more than one reasonable reading,' fails to capture 'specialized and varying' subject matter 'in its every detail,' or leaves 'no single right answer' to the interpretive question.'" *United States v. James*, 135 F.4th 1329, 1333 (11th Cir. 2025) (internal citations omitted). To begin this analysis, the Court must "start with the Guideline's text." *Id.* at 1334.

**B.    The Unambiguous Text of U.S.S.G. § 2K2.1(c)(1)(A) Shows that the Cross-reference Applies when the Defendant has Committed Another State Offense.**

The district court determined that the cross-reference in U.S.S.G. § 2K2.1(c)(1)(A) did not apply to state offenses. As the unambiguous text of the guidelines shows, however, that was incorrect.

19

The relevant text reads:

> If the defendant used or possessed any firearm . . . cited in the offense of conviction in connection with the commission or attempted commission of *another offense* . . . apply—§2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above.

U.S.S.G. § 2K2.1(c)(1)(A) (emphasis added). The critical phrase here— "another offense"—is quite broad, but this Court has recognized that "a statute is not vague or ambiguous just because it is broad." *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1240 (11th Cir. 2000).

"The language of the Sentencing Guidelines, like the language of a statute, must be given its plain and ordinary meaning." *United States v. Scheels*, 846 F.3d 1341, 1342 (11th Cir. 2017) (citation and quotation marks omitted). "To articulate [a] word's meaning, dictionary definitions are helpful." *United States v. Isaac*, 987 F.3d 980, 991 (11th Cir. 2021) (citing dictionary definitions to conclude that "the plain meaning of the operative phrase in [U.S.S.G.] § 2G2.1(b)(5) is pretty plain"); *United States v. Schreck*, 130 F.4th 1297, 1302 (11th Cir. 2025) ("[O]ne of the ways to figure out [plain and ordinary] meaning is by looking at dictionaries in existence around the time of enactment.").

20

When the Sentencing Commission promulgated the cross-reference provision 1987, the latest edition of *Black's Law Dictionary* said: "The word 'offense,' while sometimes used in various senses, generally implies a felony or a misdemeanor infringing public as distinguished from mere private rights, and punishable under the criminal laws." *Black's Law Dictionary* 975 (5th ed. 1979). *See also Black's Law Dictionary* 1081 (6th ed. 1990) (defining "offense" to mean "a breach of the criminal laws; violation of law for which penalty is prescribed"); *Mellinkoff's Dictionary of American Legal Usage* 440 (West Publ'g. Co. 1992) (defining "offense" to mean "a general, untechnical name for a crime of whatever sort").[3]  Thus the plain and ordinary meaning of the word "offense" was not restricted to violations of federal law in or around 1987 and is not so restricted now.

When read in context, the meaning of the phrase "another offense" is unambiguous. The phrase "another offense" in § 2K2.1(c)(1) is intended to

---

[3] The word is similarly defined in more contemporary dictionaries. *See Black's Law Dictionary* 1250 (10th ed. 2009) (defining "offense" to mean "[a] violation of the law; a crime, often a minor one"); *Merriam-Webster's Collegiate Dictionary* 861 (11th ed. 2020) (defining "offense" to mean "an infraction of law"); *Webster's New World College Dictionary* 1015 (5th ed. 2016) (defining "offense" to mean "the act of breaking a law").

distinguish the offense in which the firearm was used from the offense of conviction. Here, the phrase "another offense" serves to distinguish the use of the firearm during the kidnapping from the § 922(g) offense of conviction. Nothing in the language of the guideline suggests that the phrase "another offense" was intended to be limited only to federal offenses. The guideline is unambiguous, and the district court's decision to read "another offense" to mean another *federal* offense was unreasonable.

Here, as instructed by U.S.S.G. § 2X1.1(a), Probation determined that U.S.S.G. § 2A4.1(a) was "the guideline for the substantive offense"— kidnapping—and recommended that the base offense level of thirty-two be applied and that two levels be added because a dangerous weapon was used. Doc. 46 ¶¶ 20-22. Applying the cross-reference resulted in a four-level increase in Telfair's base offense level. Doc. 46 ¶ 24. With the cross-reference, and after reducing for acceptance of responsibility and entry of a timely plea, Telfair's base offense level should have been thirty-one, but the district court refused to apply it.

The district court agreed with the Probation Office and found that the United States established by a preponderance of the evidence that Telfair

22

committed the Georgia offense of kidnapping. But the court nevertheless declined to apply U.S.S.G. § 2A4.1(a)'s base offense level of thirty-two because "the elements of State kidnapping do not align with the elements of federal kidnapping." Doc. 49 at 50-51, 53. This was error.

The district court determined that the phrase "another offense" in U.S.S.G. § 2K2.1(c)(1) was unambiguous, but rejected the "idea that [it] could apply the cross-reference that would apply to federal kidnapping to a State kidnapping." Doc. 49 at 53. The court acknowledged that "if there was a cross-reference guideline for [it] to refer to, that is for State [kidnapping]," it would apply the cross-reference, but refused to "apply the offense for federal kidnapping in this case because there is no interstate element." Doc. 49 at 53-54.

The district court's analysis of the cross-referencing structure was incomplete and thus led to an erroneous interpretation. The district court understood U.S.S.G. § 2X1.1(a) to require that the other offense "be cross-referenced with another offense with an applicable federal offense level." Doc. 49 at 55. Because the court concluded that the state kidnapping offense could not be "cross-referenced to an offense that would appear in the

guideline," the court refused to apply it. Doc. 49 at 56. But the court failed to consider that because state and local offenses ordinarily do not appear in the Guidelines Manual's statutory index, the guideline to cross reference is that of "the most analogous guideline." U.S.S.G. §§ 1B1.2(a); 2X1.1, cmt. n.3; 2X5.1. Because the Sentencing Guidelines specifically contemplate situations in which there will be an offense not covered by a specific guideline, the district court erred when it concluded that to apply § 2K2.1(c)(1)'s cross-reference provision, the other offense "necessarily requires something that could have been charged federally." Doc. 49 at 56.

Just last year, the Fourth Circuit explained that the cross-reference is not limited solely to offenses that can be charged federally:

> [W]e note that the district court correctly applied the cross-reference provision in U.S.S.G. § 2K2.1(c)(1). "[W]hen a felon in possession of a firearm uses that firearm in connection with another offense, . . . the court must apply the offense level for that other offense, thereby cross-referencing it to determine the ultimate sentence," if the other offense's level "is higher than the offense level under § 2K2.1." *United States v. Burns*, 781 F.3d 688, 691 (4th Cir. 2015) (citing U.S.S.G. § 2K2.1(c)(1)). This requires the court to determine (1) what that "other offense" is and (2) its offense level under the Guidelines. When the other offense is not in the Guidelines' Statutory Index, the court must cross-reference "the most analogous guideline." U.S.S.G. § 1B1.2(a); *see also id.* at §§ 2X1.1 cmt. n.3; 2X5.1.

24

*United States v. Gross*, 90 F.4th 715, 724 (4th Cir. 2024).

The Fourth Circuit noted in *Gross* that the district court correctly identified "the other offense as North Carolina felonious assault with a deadly weapon with intent to kill or inflicting serious injury," and added, "Because this state law offense is not in the Statutory Index, the PSR concluded that the aggravated assault guideline in U.S.S.G. § 2A2.2 was the most analogous guideline. Upon determining that the aggravated assault guideline resulted in a higher offense level, the PSR cross-referenced it." *Id.* at 724. The court concluded that the district court correctly applied the cross-reference "because the aggravated assault guideline — which defines aggravated assault as 'felonious assault that involved . . . serious bodily injury,' U.S.S.G. § 2A2.2 cmt. n.1 — was the most analogous guideline to North Carolina felonious assault with a deadly weapon inflicting serious injury, N.C. Gen. Stat. Ann. § 14-32." *Id.*

The Sixth Circuit is in accord with *Gross*. In *United States v. Smith*, 910 F.2d 326, 330 (6th Cir. 1990), *superseded by statute on other grounds*, *United States v. Turnley*, 627 F.3d 1032 (6th Cir. 2010), the court explicitly held that "the district court erred in finding that the cross reference in § 2K2.2(c)(1)

25

applied only to federal crimes." The court reasoned: "The language of the guideline, the policy behind the guidelines, the commentary to other related guidelines, the definition of relevant conduct and the other cases that have considered the question all indicate that the cross reference applies to state as well as federal offenses." *Id.* The First Circuit, albeit in dicta, rejected a similar claim that the cross-reference cannot be applied to conduct that violates state law. *United States v. Arias*, No. 93-1624, 1994 WL 847, at *1, 14 F.3d 45 (1st Cir. 1994) (unpublished table decision) (citing cases).

Nothing in U.S.S.G. § 2K2.1(c)(1) or elsewhere required the district court to find that a federal kidnapping occurred or that the commission of state kidnapping could not trigger the application of the cross-reference. The court mistakenly believed that because § 2X1.1(a) resulted in the use of a federal guidelines provision to determine the base offense level, that the United States had to prove a federal offense. But the plain language of U.S.S.G. § 2K2.1 does not support the district court's conclusion. By failing to recognize that the Sentencing Guidelines both anticipate and address situations in which federal guidelines will be applied to offenses that are not expressly covered, the district court misinterpreted the breadth of the phrase

26

"another offense," whose meaning is informed by the context and structure of the guidelines. For this reason, the district court erred.

## C.    The Guidelines Commentary Further Supports a Determination that the District Court Erred.

Reference to the guideline commentary is unnecessary because the phrase "another offense" unambiguously encompasses state offenses. *See Dupree*, 57 F.4th at 1279. But even if it were ambiguous, the commentary supports a determination that the district court erred in declining to apply the cross-reference to a state offense.

In considering whether to apply U.S.S.G. § 2K2.1(c)(1) to determine Telfair's base offense level, the district court did not refer to the commentary to § 2K2.1. Instead, with reference to "the overall issue," the court concluded that "the [guideline] is . . . unambiguous."[4] Doc. 49 at 55. Thus, the court gave no deference to the Sentencing Commission's commentary to § 2K2.1(c), which defines "another offense" for purposes of § 2K2.1(c)(1) to

---

[4] The transcript actually says, "In this case, I think the statute is, as written, it is unambiguous." Doc. 49 at 55. But the district court likely misspoke and intended to say that the guideline is ambiguous—most likely referring to § 2K2.1(c)(1).

mean "any federal, *state*, or local offense." U.S.S.G. § 2K2.1 cmt. n.14(C) (emphasis added).

As discussed above, the district court's determination was incorrect. The district court's interpretation of § 2K2.1(c)(1) results from impermissibly reading the word "federal" into § 2K2.1(c)(1). The text of the guideline is unambiguous, and that unambiguous text shows that the cross-reference in § 2K2.1(c)(1) applies to state, as well as federal offenses.

Even if this Court were to conclude that § 2K2.1(c)(1) is ambiguous, reference to the commentary resolves the ambiguity. The commentary makes clear that, for purposes of § 2K2.1(c)(1), "another offense" "means any federal, state, or local offense," U.S.S.G. § 2K2.1 cmt n.14(C), and it necessarily follows that the state offense of kidnapping is "another offense" under § 2K2.1(c).  The Eighth Circuit has said precisely that.

In *United States v. Perkins*, 52 F.4th 742, 743 (8th Cir. 2022), the district court found that the defendant committed the more serious offense of Iowa state kidnapping and, as a result, substituted the federal kidnapping offense level for the firearm guidelines offense level. On appeal, the defendant maintained that "state-law violations cannot trigger the kidnapping cross

reference." *Id.* The Eighth Circuit disagreed, stating, "The phrase 'another offense,' both in isolation and in context, does not exclude state offenses." *Id.* at 744.

The Eighth Circuit reached its result after consulting the guideline commentary. The court noted that "[d]efining 'another offense' to include a state offense is not compelled by § 2K2.1." *Id.* The court concluded, however, that "it is a logical interpretation, not a plainly erroneous or inconsistent one," adding, "Note 14(C) binds this court, defeating [defendant's] argument." *Id.*

Because the court concluded that the state kidnapping offense could not be "cross-referenced to an offense that would appear in the guideline," the court refused to apply it. Doc. 49 at 56. But the court failed to consider the commentary to § 2X1.1, which provides, "If the substantive offense is not covered by a specific guideline, *see* § 2X5.1 (Other Offenses)." U.S.S.G. § 2X1.1 cmt. n.3. Section 2X5.1, in turn, provides, "If the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline." U.S.S.G. § 2X5.1. The background note to § 2X5.1 explains its purpose: "Many offenses, especially assimilative crimes,

29

are not listed in the Statutory Index or in any of the lists of Statutory Provisions that follow each offense guideline. Nonetheless, the specific guidelines that have been promulgated cover the type of criminal behavior that most such offenses proscribe." U.S.S.G. § 2X5.1 cmt. background.[5]

Thus, if this Court concludes that § 2K2.1(c)(1) is ambiguous, it should nevertheless, like *Perkins*, conclude that defining "another offense" to include a state offense is a logical interpretation, not a plainly erroneous or inconsistent one, and that the district court was bound by the commentary to apply the cross-reference.

**D.    This Court's Decision in *United States v. Cenephat* Supports a Finding that the District Court Erred.**

The district court found that Telfair used or possessed a firearm in connection with the commission of another offense—state kidnapping—but refused to apply the cross-reference because Telfair's state kidnapping was not "capable of being charged federally." Doc. 49 at 54. The district court's

---

[5] Section 1B1.2, Applicable Guidelines, reinforces § 2X5.1's directive to use the most analogous offense: "For statutory provisions not listed in the Statutory Index, use the most analogous guideline." U.S.S.G. § 1B1.2(a) (citing U.S.S.G. § 2X5.1). Reading these provisions in tandem, where "another offense" is a state offense for which no guideline has been expressly promulgated, makes clear that courts should locate and apply the "most analogous guideline."

decision runs contrary to *United States v. Cenephat*, 115 F.4th 1359, 1367-68 (11th Cir. 2024), in which this Court affirmed the application of the cross-reference to § 2X1.1 for a state offense—attempted murder—that was not capable of being charged federally.

In *Cenephat*, as here, the defendant was charged with a violation of 18 U.S.C. § 922(g)(1). 115 F.4th at 1363. And, as here, the district court found that Cenephat possessed firearms in connection with another offense—the state offense of attempted murder. *Id.* at 1364. Consistent with this finding, the district court applied the cross-reference to § 2X1.1 and applied the base offense level for the federal offense of attempted murder covered by § 2A2.1. *Id.* at 1368. On appeal, Cenephat challenged the district court's application of the guideline for attempted murder; this Court affirmed, finding that the uncontested facts supported a "finding that Cenephat possessed firearms in connection with an attempted murder." *Id.* at 1368.

The logic of *Cenephat* supports the application of the kidnapping cross-reference to Telfair's sentence, and this Court should apply *Cenephat*'s reasoning to the state kidnapping offense at issue here. It is true, as the district court noted, that in *Cenephat* the Court did not explicitly address the

31

question presented here. But the question before the Court was whether the district court erred by "calculating his offense levels under the guideline for attempted murder." *Cenephat*, 115 F. 4th at 1363. And the answer to that question necessarily implicated both the adequacy of the court's factual findings and the proper application of the guidelines. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (holding that, when reviewing a sentence, an appellate court "must first ensure that the district court committed no significant procedural error"). *See also Perkins*, 52 F.4th at 743 (noting initially that "[a] sentencing court must correctly calculate the advisory Guidelines range"). Yet the Court and the parties in *Cenephat* accepted without question that a state offense could trigger the cross-reference to § 2X1.1, even if, like the kidnapping offense here, the state offense lacked all the elements of a federal offense. Indeed, the Court in *Cenephat* could not have affirmed the sentence in that case—more particularly, the offense level yielded by the cross-reference—without finding, at least implicitly, that state offenses that cannot be charged federally can constitute "another offense" as that phrase is used in U.S.S.G. § 2K2.1(c)(1). *Cenephat* is thus persuasive authority for the proposition that the commission or attempted commission of a state offense

32

can be used as the other offense necessary to invoke the cross-reference. The district court's decision not to apply the cross-reference cannot be reconciled with the result reached in *Cenephat*.

The date of the decision in *Cenephat* adds to its persuasive value, as it was decided after the en banc Court decided *Dupree*. In *Dupree*, the en banc Court "held that guidelines commentary may only be used to construe a guideline if, having exhausted all the traditional rules of statutory interpretation, the guideline's main text is ambiguous." *Cenephat*, 115 F.4th at 1369 (citing *Dupree*, 57 F.4th at 1273-77). Cenephat raised, and the Court discussed, the application of *Dupree* to U.S.S.G. § 3C1.2, but not its application to U.S.S.G. § 2K2.1(c)(1).

*Cenephat*, moreover, does not stand alone. This Court has routinely affirmed cases in which the cross-reference provision was applied to other state offenses. Doc. 47 at 4. *See, e.g.*, *United States v. Robinson*, No. 23-11325, 2024 WL 1550870, at *2-3 (11th Cir. Apr. 10, 2024) (affirming the cross-reference for Florida attempted murder using U.S.S.G. § 2A2.1); *United States v. Foster*, 229 F. App'x 883, 885 (11th Cir. 2007) (affirming the cross-reference for state offense of attempted kidnapping using U.S.S.G. § 2A4.1(a)); *United*

*States v. Adams*, 518 F. App'x 765, 769 (11th Cir. 2013) (affirming the cross-reference for state offense of attempted murder using U.S.S.G. § 2A2.1(a)(1)).

The district court's reason for disregarding well-established authority supporting the application of the cross-reference to state offenses is illogical. The district court suggested that for the cross-reference to apply, "the other offense here would necessarily have to be capable of being charged federally." Doc. 49 at 54. But if the other offense were capable of being charged federally, it likely would have been charged federally, and the cross-reference would serve little purpose. And the district court's reasoning is inconsistent with the purpose of the cross-refence: to adequately reflect the severity of the defendant's criminal conduct. As this Court has explained, "the 2K2.1 sentencing scheme permits the sentencing court to impose a sentence which reflects the magnitude of the crime." *United States v. Aduwo*, 64 F.3d 626, 629 (11th Cir. 1995). In *Aduwo*, the Court noted that, as a result of the cross-reference, "a defendant who merely possesses a firearm illegally will be sentenced under § 2K2.1(a) and (b), but a defendant who then uses that weapon in another crime may be given a longer sentence under the

34

guideline applicable to the subsequent crime instead." *Id.* The district court's

interpretation of the cross-reference thwarts its purpose.

## CONCLUSION

The United States respectfully submits that this Court should vacate

the sentence imposed by the district court and remand for resentencing.

July 14, 2025

WILLIAM R. KEYES
UNITED STATES ATTORNEY

By:　/s/ Stuart E. Walker
　　　Assistant United States Attorney
　　　Georgia Bar No. 141620

300 Mulberry St., Suite 400
P. O. Box 1702
Macon, Georgia 31202
(478) 752-3511
stuart.walker@usdoj.gov

35

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B).  This brief contains 6877 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).  Using Microsoft Word 365, this document has been prepared using a proportionally spaced typeface in 14-point characters in Book Antiqua font.

July 14, 2025

By:    /s/ Stuart E. Walker
       Assistant United States Attorney
       Georgia Bar No. 141620

300 Mulberry St., Suite 400
P. O. Box 1702
Macon, Georgia 31202
(478) 752-3511
stuart.walker@usdoj.gov

36

## CERTIFICATE OF SERVICE

I do hereby certify that I electronically filed the within and foregoing Brief of Appellant with the Clerk of the Court using the Eleventh Circuit's CM/ECF system, which will send electronic notification of filing to counsel of record for Appellee. Consistent with Eleventh Circuit Rule 31-3, paper copies will be dispatched as directed by the clerk at the conclusion of briefing.

July 14, 2025

By:   /s/ Stuart E. Walker
   Assistant United States Attorney
   Georgia Bar No. 141620

300 Mulberry St., Suite 400
P. O. Box 1702
Macon, Georgia 31202
(478) 752-3511
stuart.walker@usdoj.gov